LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

—————————————————————

JOSE REYES, *on behalf of himself and*
*all others similarly situated*,

            Plaintiff,

               -against-

WESTERN NEW YORK ARENA, LLC
d/b/a THE KEYBANK CENTER,

            Defendant.

—————————————————————

Case No.:

**CLASS ACTION COMPLAINT**

Plaintiff, JOSE REYES (hereinafter "Plaintiff"), on behalf of himself and all others similarly

situated, by and through his undersigned attorney, hereby files this Class Action Complaint

against Defendant, WESTERN NEW YORK ARENA, LLC d/b/a THE KEYBANK CENTER

(hereinafter "Defendant"), and states as follows:

## INTRODUCTION

    1.    This class action seeks to put an end to systemic civil rights violations committed

by Defendant against people in New York State and across the United States who are disabled

due to metabolic disorders that severely constrain their ability to freely consume food[1] ("metabolically-disabled" or "eating-constrained" individuals). Members of this Class must consume particular types and portions of food to mitigate their disability, and consequently must bring this food with them whenever they go out for an extended period of time, such as to attend an event at a public facility, such as a stadium, arena, theater, performance hall, etc. Defendant is denying disabled individuals throughout the United States equal access to the goods and services that Defendant provides to its customers at *The Keybank Center* (hereinafter the "Public Facility") who do not have disabilities causing eating constraints. The Public Facility provides to the public a wide array of the events, goods, services, and other programs offered by Defendant. Yet, Defendant imposes access barriers that make it difficult, if not impossible, for customers who are medically obligated to eat only particular foods to access and enjoy the public accommodations at the Public Facility. Specifically, the Public Facility does not allow outside food, which is an access barrier preventing disabled people with metabolic disorders from being able to access the Public Facility, since this group of people has disabilities that are treated with particular food items. See attached **Exhibit A** for Defendant's "No Outside Food" policy.

2.       In fact, the access barrier created by Defendant's "no outside food allowed" policy makes it impossible for users with medical eating constraints to attend events at the Public Facility. Defendant thus excludes people who are disabled due to metabolic disorders from the full and equal participation in the public events at the Public Facility.

3.       Plaintiff is disabled due to a metabolic disorder. Specifically, he has been diagnosed with diabetes mellitus. He brings this civil rights class action against Defendant for

---

[1] Such disorders include diabetes mellitus, diabetes insipidus, glycogen storage disease, very long-chain acyl-CoA dehydrogenase deficiency, long-chain 3-hydroxyacyl-coenzyme A dehydrogenase deficiency, medium-chain acyl-coenzyme A dehydrogenase deficiency, short-chain acyl-CoA dehydrogenase deficiency, and other disorders.

failing to design, construct, and/or own or operate a Public Facility that is fully accessible to, and independently usable by, eating-constrained people.

4.      Plaintiff uses the terms "metabolically-disabled individuals," "disabled people with metabolic disorders," and "eating-constrained individuals" to refer to all persons with metabolic impairments who meet the legal definition of disability in that they are limited in a major life activity and these impairments can be partly ameliorated by food or drink. Courts have found that diabetes limits its sufferers' ability to eat, to think (if the diabetes is untreated by food), or both.[2]

5.      Numerous courts have ruled in accordance with the scientific fact that diabetes mellitus, Plaintiff's disease, is mitigated by food. The Seventh Circuit provides an apt description of diabetes mellitus in *Branham v. Snow*, 392 F.3d 896 (7th Cir. 2004):

> [The plaintiff] is significantly restricted as to the manner in which he can eat as compared to the average person in the general population. His dietary intake is dictated by his diabetes, and must respond, with significant precision, to the blood sugar readings he takes four times a day. Depending upon the level of his blood sugar, Mr. Branham may have to eat immediately, may have to wait to eat, or may have to eat certain types of food. Even after the mitigating measures of his treatment regimen, he is never free to eat whatever he pleases because he risks both mild and severe bodily reactions if he disregards his blood sugar readings. He must adjust his diet to compensate for any greater exertion, stress, or illness that he experiences.

*Branham*, 392 F.3d at *903-04.

6.      Likewise, in *Fraser v. Goodale*, 342 F.3d 1032 (9th Cir. 2003), the Ninth Circuit

---

[2] *See, e.g.*, *Nawrot v. CPC Intern.*, 277 F.3d 896, 904–905 (7th Cir. 2002) (diabetes affected ability to think and perform tasks); *Bugg-Barber v. Randstad US, L.P.*, 271 F. Supp. 2d 120, 128 (D.D.C. 2003) (similar); *Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 924–926 (7th Cir. 2001) (diabetes substantially limited eating); *Downs v. AOL Time Warner, Inc.*, No. 2:03-CV-1117, 2006 U.S. Dist. LEXIS 4848, at *5 (S.D. Ohio Jan. 20, 2006) (similar); *U.S. v. Mississippi Dept. of Public Safety*, 309 F. Supp. 2d 837, 840 (S.D. Miss. 2004) (similar); *Gonsalves v. J.F. Fredericks Tool Co., Inc.*, 964 F. Supp. 616, 621 (D. Conn. 1997) (diabetes affected eating and sleeping); *Coghlan v. H.J. Heinz Co.*, 851 F. Supp. 808, 813–814 (N.D. Tex.1994) (similar); *Erjavac v. Holy Family Health Plus*, 13 F. Supp. 2d 737, 746–748 (N.D. Ill. 1998) (eating and waste elimination); *Shirley v. Westgate Fabrics*, Civil Action No. 3:95-CV-2550-D, 1997 U.S. Dist. LEXIS 16545, at *3 (N.D. Tex. Mar. 17, 1997) (similar).

described diabetes' effect as follows:

> [The plaintiff] must always have certain foods available in case her blood sugar drops or skyrockets. She must always be able to take time to eat or give herself injections to balance her blood sugar levels. She cannot put a morsel of food in her mouth without carefully assessing whether it will tip her blood sugars out of balance. She cannot skip or postpone a snack or meal without cautiously studying her insulin and glucagon levels. She must constantly, faithfully, and precisely monitor her eating, exercise, blood sugar, and other health factors, and even this is no guarantee of success.

*Fraser*, 342 F.3d at *1039-41.

7.      Millions of people in the United States suffer from disabilities that impose eating constraints on them. As of 2015, 30.3 million people in the United States have diabetes[3], including approximately 2 million persons in New York State.[4] Other metabolic diseases affect thousands more people in the United States. Approximately 15,000 Americans suffer from Glycogen-Storage Disease Type 1[5], 10,000 suffer from diabetes insipidus[6], and 10,000 suffer from various forms of acyl-coa dehydrogenase deficiency.[7, 8]

8.      Metabolically-disabled people enjoy public events just as other people do. However, the lack of an accessible public facility means that metabolically-disabled people are excluded from accessing events, goods, services, and other programs offered by Defendant at the Public Facility.

9.      Making the Public Facility accessible to Plaintiff and the proposed Class would not require Defendant to implement an expensive redesign of the Public Facility. All Defendant

---

[3] Americans with Disabilities: 2010 Report, U.S. Census Bureau Reports
[4] http://www.diabetes.org/in-my-community/local-offices/new-york-new-york/
[5] Glycogen-Storage Disease Type 1 occurs in one out of every 20,000-25,000 births. https://emedicine.medscape.com/article/949937-overview
[6] Diabetes insipidus occurs in three out of every 100,000 births. Saborio P, Tipton GA, Chan JC (2000). "Diabetes Insipidus". *Pediatrics in Review*. 21 (4): 122–129. doi:10.1542/pir.21-4-122. PMID 10756175.
[7] Very-long-chain acyl-coa dehydrogenase deficiency occurs in 1 out of every 40,000-120,000 births. https://ghr.nlm.nih.gov/condition/very-long-chain-acyl-coa-dehydrogenase-deficiency#statistics
[8] Short-chain acyl-coa dehydrogenase deficiency occurs in 1 out of every 35,000-50,000 births. https://ghr.nlm.nih.gov/condition/short-chain-acyl-coa-dehydrogenase-deficiency#statistics

must do is stop enforcing its draconian anti-food policy against disabled people who need food to treat their condition. Additionally, allowing outside food into the Public Facility would not present any impractical difficulties. Some similar public facilities, such as Yankee Stadium, allow **any** customer to bring in outside food and beverages.[9]

10.     By failing to make the Public Facility accessible to metabolically-disabled persons, Defendant is violating basic equal access requirements under both state and federal law.

11.     Congress provided a clear and national mandate for the elimination of discrimination against individuals with disabilities when it enacted the Americans with Disabilities Act. Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by Public Facilities and other public accommodations that are inaccessible to those with physical disabilities. Similarly, New York state and local law require places of public accommodation to ensure access to goods, services, and facilities by making reasonable accommodations for persons with disabilities.

12.     Plaintiff intended to attend *Justin Timberlake's concert* in or around October 28, 2018 at the Public Facility. However, he did not book a ticket due to the accessibility barrier of outside food being banned, as Defendant clearly states on its website, https://www.keybankcenter.com/general/2 (hereinafter the "Website). See attached **Exhibit A**. Such barrier poses a significant health risk to Plaintiff and Class members. Unless Defendant remedies this access barrier, Plaintiff and Class members will continue to be unable to attend events at the Public Facility. Plaintiff intends to take advantage of the facilities offered by Defendant in the future, once the access barriers are remedied.

---

[9] http://m.yankees.mlb.com/ballpark/information/policies

13.     This complaint seeks declaratory and injunctive relief to correct Defendant's policies and practices to include measures necessary to ensure compliance with federal and state law, to include monitoring of such measures, and to update and remove accessibility barriers at the Public Facility created by Defendant's policies so that Plaintiff and the proposed Class of customers who are metabolically-disabled will be able to independently use Defendant's Public Facility. This complaint also seeks compensatory damages to compensate Class members for having been subjected to unlawful discrimination.

## JURISDICTION AND VENUE

14.     Defendant operates the Public Facility located at 1 Seymour H. Knox III Plaza, Buffalo, NY 14203-3906.

15.     Defendant is a for-profit corporation organized under the laws of New York, with a service of process address at 1 Seymour H. Knox III Plaza, Buffalo, NY 14203-3906.

16.     Venue is proper in the Southern District pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1441(a).

17.     This Court has subject matter jurisdiction of this action pursuant to:

**(A)**     28 U.S.C. § 1331 and 42 U.S.C. § 12188, for Plaintiff's claims arising under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.*, ("ADA"); and

**(B)**     28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. See 28 U.S.C. § 1332(d)(2).

18.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367, over Plaintiff's pendent claims under the New York State Human Rights Law, N.Y. Exec. Law, Article 15 (Executive Law § 290 *et seq*.), and the New York City Human Rights Law, N.Y.C. Administrative Code § 8-101 *et seq*. ("City Law").

## PARTIES

19.     Plaintiff is and has been at all times material hereto a resident of Bronx County, New York. Plaintiff has been diagnosed with diabetes mellitus, making him a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR § 36.101 *et seq.*, the New York State Human Rights Law, and the New York City Human Rights Law. Plaintiff was first diagnosed with diabetes mellitus and put on a restricted diet in 2016. Plaintiff cannot eat outside of his meal plan, except that he must snack to boost his blood sugar if it gets dangerously low. Plaintiff's choice of snacks is based upon their individualized meal plan and should be left to their discretion. As a result of his disability, Plaintiff's blood sugar is unstable and may drop suddenly, which has serious consequences for Plaintiff, particularly if he cannot remedy it by immediately eating an appropriate snack and injecting a correspondingly appropriate amount of insulin. Plaintiff cannot eat sugar, wheat, non-packaged foods of indeterminate calorie amount, or foods that exceed a given meal's calorie allotment.

20.     When he cannot bring his own packaged or pre-measured food to an event, Plaintiff is at risk of both overeating and undereating. When this happens, he is at further risk of either using too much insulin or not enough. In short, the way he treats her disease is to carry specific snacks containing particular amounts of sugar, and to consume those snacks with the appropriate amount of insulin.

21.     It is particularly important that Plaintiff use his precise system to manage his blood sugar because symptoms of low blood sugar include weakness, dizziness, and confusion.[10] Hypothetical alternatives, such as standing in line to buy food containing an unknown amount of sugars, are not practical for people with disabilities such as Plaintiff's.

22.     Plaintiff has been denied the full enjoyment of the facilities, goods, and services of the Public Facility, as well as to the events, facilities, goods, and services of Defendant, as a result of accessibility barriers of the Public Facility. Most recently in August 2018, Plaintiff intended to buy tickets to attend an event at the Public Facility but did not do so due to the advertised inaccessibility of the Public Facility, i.e. its policy of not allowing outside food. See **Exhibit A**. The inaccessibility of the Public Facility has deterred Plaintiff and Class members from the enjoyment of the Public Facility. Nonetheless, Plaintiff intends to attend a similar event at the Public Facility as soon as Defendant fixes its discriminatory policies.

23.     Defendant owns and operates the Public Facility, which is a place of public accommodation located in New York. Among other things, the Public Facility hosts events open to the public by Defendant, including games, concerts, and other benefits related to these events. The inaccessibility of the Public Facility has deterred Plaintiff from attending events at the Public Facility.

24.     Plaintiff, on behalf of himself and all others similarly situated, seeks full and equal access to the goods and services provided by Defendant through the Public Facility.

---

[10] http://www.diabetes.org/living-with-diabetes/treatment-and-care/blood-glucose-control/hypoglycemia-low-blood.html

## CLASS ACTION ALLEGATIONS

25.     Plaintiff, on behalf of himself and all others similarly situated, seeks certification of the following nationwide Class pursuant to Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure: "all legally metabolically-disabled individuals in the United States who have attempted to access the Public Facility and as a result have been denied access to the enjoyment of goods and services offered in the Public Facility during the relevant statutory period."

26.     Plaintiff seeks certification of the following New York Subclass pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and, alternatively, 23(b)(3): "all metabolically-disabled individuals in New York State who have attempted to access the Public Facility and as a result have been denied access to the enjoyment of goods and services offered by Defendant during the relevant statutory period."

27.     Millions of people have a physical disability that is partly treatable by diet in the United States, including in New York. Thus, the persons in the Class are so numerous that joinder of all such persons is impractical and the disposition of their claims in a class action is a benefit to the parties and to the Court.

28.     This case arises out of Defendant's policy and practice of maintaining an inaccessible Public Facility, denying metabolically-disabled persons access to the events, goods, and services of the Public Facility and Defendant. Due to Defendant's policy and practice of imposing access barriers, metabolically-disabled persons have been and are being denied full and equal access to the Public Facility.

29.     There are common questions of law and fact common to the class, including without limitation, the following:

        (a)     Whether the Public Facility is a "public accommodation" under the ADA;

        (b)     Whether the Public Facility is a "place or provider of public

accommodation" under the laws of the New York;

    (c)    Whether Defendant through the Public Facility denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to people with metabolic disabilities in violation of the ADA; and

    (d)    Whether Defendant through the Public Facility denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to people with metabolic disabilities in violation of the laws of New York.

30.    The claims of the named Plaintiff are typical of those of the Class. The Class, similarly to Plaintiff, have metabolic disorders that render them metabolically-disabled, and claim that Defendant has violated the ADA, and/or the laws of New York by imposing access barriers on the Public Facility, such that it is not accessible to the Class of people who are legally disabled due to eating constraints.

31.    Plaintiff will fairly and adequately represent and protect the interests of the members of the Class because Plaintiff has retained and is represented by counsel competent and experienced in complex class action litigation, and because Plaintiff has no interests antagonistic to the members of the Class. Class certification of the claims is appropriate pursuant to Fed. R. Civ P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

32.    Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to Class members clearly predominate over questions

10

affecting only individual Class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

33.     Judicial economy will be served by maintenance of this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people with metabolic disabilities throughout the United States.

34.     References to Plaintiff shall be deemed to include the named Plaintiff and each member of the Class, unless otherwise indicated.

## **FACTUAL ALLEGATIONS**

35.     Defendant operates the Public Facility located at 1 Seymour H. Knox III Plaza, Buffalo, NY 14203-3906.

36.     The Public Facility is a service and benefit offered by Defendant in New York. The Public Facility is owned, controlled, and/or operated by Defendant. Defendant sells tickets to events at the Public Facility and on their Website, including in New York State.

37.     The Public Facility, which is marketed to consumers located in New York State, is a commercial Public Facility that hosts events and sells goods and services.

38.     This case arises out of Defendant's policy and practice of denying the metabolically-disabled access to the Public Facility, including the goods and services offered by Defendant through the Public Facility. Due to Defendant's imposition of access barriers to the Public Facility, metabolically-disabled individuals have been and are being denied equal access to the Public Facility, as well as to the numerous goods, services, and benefits offered to the public through the Public Facility.

39.     Defendant denies the metabolically-disabled access to goods, services, and information made available through the Public Facility by preventing them from freely entering the Public Facility with the food they need to treat their disability.

40.     Allowing disabled people to bring medical supplies into the Public Facility presents no significant obstacles or difficulties for Defendant. Other public facilities allow diabetic individuals to bring insulin supplies onto their premises. However, simply bringing insulin supplies is insufficient because: 1) diabetic individuals need readily available food in case their blood sugar drops, 2) many diabetic individuals (including Plaintiff) need to bring pre-measured food to match their insulin to the quantity of food consumed, and 3) Defendant's policy ignores metabolically-disabled individuals with other disabilities that are treated by food.

41.     The Public Facility states clearly on the Website that it does not allow outside food, which constitutes an access barrier that prevents free and full use by Plaintiff and metabolically-disabled persons. See **Exhibit A**.

42.     The Public Facility thus contains access barriers which deny full and equal access to Plaintiff, who would otherwise use the Public Facility and who would otherwise be able to fully and equally enjoy the benefits and services of Defendant.

43.     Plaintiff attempted to purchase tickets for *Justin Timberlake's concert* at the Public Facility, most recently in August 2018. However, Plaintiff did not purchase tickets because he would have been unable to ultimately access the Public Facility because of the access barrier imposed by Defendant's no outside food policy, as seen on the Website and attached hereto as **Exhibit A.** These access barriers have caused the Public Facility to be inaccessible to, and not independently usable by, metabolically-disabled individuals.

44.     As described above, Plaintiff has actual knowledge of the fact that Defendant's Public Facility contains access barriers causing the Public Facility to be inaccessible to—and not independently usable by—metabolically-disabled individuals.

45.     These barriers have denied Plaintiff full and equal access to, and enjoyment of, the goods, benefits, and services of the Public Facility and Defendant. Plaintiff did not attempt to attend an event at the Public Facility because he understood Defendant's discriminatory policy and knew that such an attempt would be futile. The ADA explicitly does not require "a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization . . . does not intend to comply [with Title III of the ADA]." 42 U.S.C. § 12188(a)(2)). This is particularly true for Plaintiff, for whom going out in public without available snacks would be a health risk. *Disabled Ams. for Equal Access, Inc. v. Ferries del Caribe, Inc.*, 405 F.3d 60, 65 n.7 (1st Cir. 2005).

46.     Plaintiff was injured by his loss of opportunity to enjoy the Public Facility. The ADA "expressly contemplates loss of opportunity as an actionable injury." *Betancourt v. Federated Dep't Stores*, 732 F. Supp. 2d 693, 707 (W.D. Tex. 2010) (citing 42 U.S.C. § 12182(a), (b)). Defendant engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

(a)     constructing and maintaining a Public Facility that is inaccessible to metabolically-disabled class members with knowledge of the discrimination; and/or

(b)     constructing and maintaining a Public Facility that is sufficiently intuitively and/or obviously inaccessible to metabolically-disabled Class members; and/or

(c)     failing to take actions to correct these access barriers in the face of

substantial harm and discrimination to metabolically-disabled Class

members.

47.     Defendant utilizes standards, criteria, or methods of administration that have the

effect of discriminating or perpetuating the discrimination of others.

48.     Plaintiff and the Class are disabled for purposes of the ADA. 42 U.S.C.S. § 12102

reads in pertinent part:

(1)  Disability. The term "disability" means, with respect to an individual—
    ▪ (A)  a physical or mental impairment that substantially limits one or more
      major life activities of such individual;
      . . . .
(2)  Major life activities.
    ▪ (A)  In general. For purposes of paragraph (1), major life activities
      include, but are not limited to . . . eating . . . .

49.     Accordingly, courts have interpreted diseases such as food disorders and diabetes

as disabilities because those diseases interfere with eating.

50.     Even before the ADA was amended in 2008 to explicitly include "eating" as a

"major life activity," courts interpreting the ADA considered eating to be a major life activity.

Recent decisions also hold that diabetes is a disability covered by the ADA. 42 U.S.C.S. § 12102

codifies this law because diabetes limits the major life activity of eating. *See, e.g.*, *Kells v. Sinclair*

*Buick--GMC Truck, Inc.*, 210 F.3d 827, 830–831 (8th Cir. 2000) (noting that diabetes is a

"recognized ADA impairment[]"); *Lee v. District of Columbia*, 920 F. Supp. 2d 127, 135 (D.D.C.

2013) ("A reasonable jury could therefore find that Mr. Lee was disabled within the meaning of

the Americans with Disabilities Act."); *Girten v. Town of Schererville*, 819 F. Supp. 2d 786, 798

(N.D. Ind. 2011) ("Without question, Girten's diabetes is quite serious and a jury could reasonably

find that Girten's condition substantially limits the major life activity of eating."); *Nawrot v. CPC*

*Intern.*, 277 F.3d 896, 904–905 (7th Cir. 2002) (diabetes affected ability to think and perform

tasks); *Bugg-Barber v. Randstad US, L.P.*, 271 F. Supp. 2d 120, 128 (D.D.C. 2003) (similar);
*Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 924–926 (7th Cir. 2001) (diabetes substantially limited
eating); *Downs v. AOL Time Warner, Inc.*, No. 2:03-CV-1117, 2006 U.S. Dist. LEXIS 4848, at *5
(S.D. Ohio Jan. 20, 2006) (similar); *U.S. v. Mississippi Dept. of Public Safety*, 309 F. Supp. 2d
837, 840 (S.D. Miss. 2004) (similar); *Gonsalves v. J.F. Fredericks Tool Co., Inc.*, 964 F. Supp.
616, 621 (D. Conn. 1997) (diabetes affected eating and sleeping); *Coghlan v. H.J. Heinz Co.*, 851
F. Supp. 808, 813–814 (N.D. Tex.1994) (similar); *Erjavac v. Holy Family Health Plus*, 13 F. Supp.
2d 737, 746–748 (N.D. Ill. 1998) (eating and waste elimination); *Shirley v. Westgate Fabrics*, Civil
Action No. 3:95-CV-2550-D, 1997 U.S. Dist. LEXIS 16545, at *3 (N.D. Tex. Mar. 17, 1997)
(similar).

51.    Even episodic disabilities less severe than Plaintiff's disease would qualify for
protection under Title III. *Service v. Union Pacific R.R. Co.*, 153 F. Supp. 2d 1187, 1192 (E.D.
Cal. 2001) ("Plaintiff need not be in a constant state of distress or suffer an asthmatic attack to
qualify as disabled under the ADA."). Plaintiff's disease is severe enough to decisively limit his
major life activity of eating.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**(Violation of 42 U.S.C. § 12181, *et seq.*—Title III of the Americans with Disabilities Act)**
*(on behalf of Plaintiff and the Class)*

52.    Plaintiff realleges and incorporates by reference the foregoing allegations as if set
forth fully herein.

53.    Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12182(a),
provides that "No individual shall be discriminated against on the basis of disability in the full and
equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of

any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." Title III also prohibits an entity from "[u]tilizing standards or criteria or methods of administration that have the effect of discriminating on the basis of disability." 42 U.S.C. § 12181(b)(2)(D)(I).

54.     The Public Facility, located in New York, is a public accommodation within the definition of 42 U.S.C. § 12181(7)(C) because it is "a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment." (emphasis added).

55.     Defendant is subject to Title III of the ADA because it owns and operates the Public Facility.

56.     Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(I), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

57.     Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

58.     Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

59.     In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

60.     Many public facilities allow outside food into their venues (as required under the ADA). The policy of allowing outside food does not unduly burden those venues. Plaintiff and the Class merely seek to bring into the Public Facility the food they need for medical reasons. This would not disrupt the Public Facility's operations.

61.     The acts alleged herein constitute violations of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* and the regulations promulgated thereunder. Patrons of Defendant who are metabolically-disabled have been denied full and equal access to the Public Facility, have not been provided services that are provided to other patrons who are not disabled, and/or have been provided services that are inferior to the services provided to non-disabled patrons.

62.     Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

63.     As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff and members of the proposed Class and Subclass on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations, and/or opportunities of the Public Facility and Defendant in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* and/or its implementing

regulations.

64.    Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the proposed Class and Subclass will continue to suffer irreparable harm.

65.    The actions of Defendant were and are in violation of the ADA and therefore Plaintiff invokes his statutory right to injunctive relief to remedy the discrimination.

66.    Plaintiff is also entitled to reasonable attorneys' fees and costs.

67.    Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## SECOND CAUSE OF ACTION

**(Violation of New York State Human Rights Law, N.Y. Exec. Law,
Article 15 (Executive Law § 292 *et seq*.)
*(on behalf of Plaintiff and New York Subclass)*)**

68.    Plaintiff realleges and incorporates by reference the foregoing allegations as though fully set forth herein.

69.    N.Y. Exec. Law § 296(2)(a) provides that it is "an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation . . . because of the . . . disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

70.    The Public Facility, located in New York State, is a sales establishment and public accommodation within the definition of N.Y. Exec. Law § 292(9). The Public Facility is a service, privilege, or advantage of Defendant. Food at the Public Facility is sold by, and integrated with, the Public Facility.

71.    Defendant is subject to the New York Human Rights Law because it owns and

operates the Public Facility. Defendant is a person within the meaning of N.Y. Exec. Law § 292(1).

72.     Defendant is violating N.Y. Exec. Law § 296(2)(a) in imposing access barriers to the Public Facility, causing the Public Facility and the services integrated with the Public Facility to be completely inaccessible to the metabolically-disabled. This inaccessibility denies metabolically-disabled patrons full and equal access to the facilities, goods, and services that Defendant makes available to the non-disabled public.

73.     Specifically, under N.Y. Exec. Law § 296(2)(c)(I), unlawful discriminatory practice includes, among other things, "a refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations."

74.     In addition, under N.Y. Exec. Law § 296(2)(c)(II), unlawful discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden."

75.     To make the Public Facility accessible to the metabolically-disabled, Defendant need only cease its existing policy. Making the Public Facility accessible by allowing people to bring in food would not alter the nature of Defendant's business nor result in an undue burden to Defendant.

76.     Defendant's actions constitute willful intentional discrimination against the

Subclass on the basis of a disability in violation of the New York State Human Rights Law, N.Y. Exc. Law § 296(2) in that Defendant has:

    (a)    constructed and maintained a Public Facility that is inaccessible to metabolically-disabled Subclass members with knowledge of the discrimination; and/or

    (b)    constructed and maintained a Public Facility that is sufficiently intuitive and/or obvious that is inaccessible to metabolically-disabled Subclass members; and/or

    (c)    failed to take actions to correct these access barriers in the face of substantial harm and discrimination to metabolically-disabled Subclass members.

77. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

78. As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff and members of the proposed Subclass on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations, and/or opportunities of the Public Facility and Defendant under § 296(2) *et seq.* and/or its implementing regulations. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Subclass will continue to suffer irreparable harm.

79. The actions of Defendant were and are in violation of New York State Human Rights Law and therefore Plaintiff invokes his right to injunctive relief to remedy the discrimination.

80. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines pursuant to N.Y. Exc. Law § 297(4)(c) *et seq.* for each and every offense.

81.     Plaintiff is also entitled to reasonable attorneys' fees and costs.

82.     Pursuant to N.Y. Exec. Law § 297 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

### THIRD CAUSE OF ACTION
**(Violation of New York State Civil Rights Law, NY CLS Civ R,
Article 4 (CLS Civ R § 40 *et seq*.)
*(on behalf of Plaintiff and New York Subclass)***

83.     Plaintiff served notice thereof upon the attorney general as required by N.Y. Civil Rights Law § 41.

84.     Plaintiff realleges and incorporates by reference the foregoing allegations as though fully set forth herein.

85.     N.Y. Civil Rights Law § 40 provides that "all persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of any places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No persons, being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any such place shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities and privileges thereof . . . ."

86.     N.Y. Civil Rights Law § 40-c(2) provides that "no person because of . . . disability, as such term is defined in section two hundred ninety-two of executive law, be subjected to any discrimination in his or her civil rights, or to any harassment, as defined in section 240.25 of the penal law, in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision."

87.     Plaintiff and Class are within the Jurisdiction of New York. Plaintiff is a resident of New York State and accessed the Website in New York State. Class members are residents of

New York State and have accessed the Website in New York State. Plaintiff and Class members are covered by the New York Civil Rights Laws. The Public Facility and the Website, targeting New York citizens in New York State, are sales establishments and public accommodations within the definition of N.Y. Civil Rights Law § 40-c(2). The Public Facility and the Website are services, privileges, and/or advantages of Defendant. Food at the Public Facility is sold by, and integrated with, the Public Facility. Events at the Public Facility are integrated with ticket sales and information on the Website.

88.     Defendant is subject to New York Civil Rights Law because it owns and operates the Public Facility. Defendant is a person within the meaning of N.Y. Civil Law § 40-c(2).

89.     Defendant is violating N.Y. Civil Rights Law § 40-c(2) in imposing access barriers to the Public Facility, causing the Public Facility and the services integrated with the Public Facility to be completely inaccessible to the metabolically-disabled. This inaccessibility denies metabolically-disabled patrons full and equal access to the facilities, goods, and services that Defendant makes available to the non-disabled public.

90.     To make the Public Facility accessible to the metabolically-disabled, Defendant need only cease its existing policy. Making the Public Facility accessible by allowing people to bring in food to would not fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

91.     In addition, N.Y. Civil Rights Law § 41 states that "any corporation which shall violate any of the provisions of sections forty, forty-a, forty-b or forty-two . . . shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby . . . ."

92.     Specifically, under NY Civ Rights Law § 40-d, "any person who shall violate any

of the provisions of the foregoing section, or subdivision three of section 240.30 or section 240.31 of the penal law, or who shall aid or incite the violation of any of said provisions shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby in any court of competent jurisdiction in the county in which the defendant shall reside . . . ."

93.     Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

94.     As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff and members of the proposed Subclass on the basis of disability are being directly or indirectly refused, withheld from, or denied the accommodations, advantages, facilities and privileges thereof in § 40 *et seq.* and/or its implementing regulations.

95.     Plaintiff and Subclass members are entitled to compensatory damages of five hundred dollars per instance, as well as civil penalties and fines pursuant to N.Y. Civil Law § 40 *et seq.* for each and every offense.

## FOURTH CAUSE OF ACTION

**(Violation of New York City Human Rights Law,**
**N.Y.C. Administrative Code § 8-102, *et seq.*)**
***(on behalf of Plaintiff and New York Subclass)***

96.     Plaintiff realleges and incorporates by reference the foregoing allegations as if set forth fully herein.

97.     N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation, because of . . . disability . . . directly or indirectly, to refuse, withhold from or deny to such person, any of the accommodations, advantages, facilities or privileges thereof."

98.     The Public Facility and the Website, targeting New York citizens in New York State, are sales establishments and public accommodations within the definition of N.Y.C. Administrative Code § 8-102(9). The Public Facility and the Website are services, privileges, and/or advantages of Defendant. Food at the Public Facility is sold by, and integrated with, the Public Facility. Events at the Public Facility are integrated with ticket sales and information on the Public Facility website.

99.     Defendant is subject to City Law because it owns and operates the Public Facility. Defendant is a person within the meaning of N.Y.C. Administrative Code § 8-102(1).

100.     Defendant is violating N.Y.C. Administrative Code § 8-107(4)(a) in imposing access barriers to the Public Facility, causing the Public Facility and the services integrated with the Public Facility to be completely inaccessible to the metabolically-disabled. This inaccessibility denies metabolically-disabled patrons full and equal access to the facilities, goods, and services that Defendant makes available to the non-disabled public. Specifically, Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating on the basis of disability shall make reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Administrative Code § 8-107(15)(a).

101.     Defendant's actions constitute willful intentional discrimination against the Subclass on the basis of a disability in violation of the N.Y.C. Administrative Code §§ 8-107(4)(a) and 8-107(15)(a) in that Defendant has:

(a) constructed and maintained a Public Facility that is inaccessible to metabolically-disabled Subclass members with knowledge of the discrimination; and/or

(b) constructed and maintained a Public Facility for which it is sufficiently intuitive and/or obvious that it is inaccessible to metabolically-disabled Subclass members; and/or

(c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to metabolically-disabled Subclass members.

102.   Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

103.   To make the Public Facility accessible to the metabolically-disabled, Defendant need only cease its existing policy. Making the Public Facility accessible by allowing people to bring in food to would not fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

104.   As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff and members of the proposed Class and Subclass on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations, and/or opportunities of the Public Facility and Defendant under § 8-107(4)(a) and/or its implementing regulations. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Subclass will continue to suffer irreparable harm.

105.   The actions of Defendant were and are in violation of City Law and therefore

Plaintiff invokes his right to injunctive relief to remedy the discrimination.

106.   Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code §§ 8-120(8) and 8-126(a) for each offense.

107.   Plaintiff is also entitled to reasonable attorneys' fees and costs.

108.   Pursuant to N.Y.C. Administrative Code §§ 8-120 and 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

### FIFTH CAUSE OF ACTION

**(Declaratory Relief)**
***(on behalf of Plaintiff and the Class)***

109.   Plaintiff realleges and incorporates by reference the foregoing allegations as if set forth fully herein.

110.   An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Public Facility contains access barriers denying metabolically-disabled customers full and equal access to the goods, services, and facilities of the Public Facility, which Defendant owns, operates, and/or controls, and fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.*, N.Y. Exec. Law § 296, *et seq.,* and N.Y.C. Administrative Code § 8-107, *et seq.* prohibiting discrimination against the metabolically-disabled.

111.   A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

WHEREFORE, Plaintiff prays for judgment as set forth below.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff requests relief as follows:

112.   A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.,* N.Y. Exec. Law § 296, *et seq.,* N.Y.C. Administrative Code § 8-107, *et seq.*, and the laws of New York;

113.   A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make its Public Facility be in full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the Public Facility is readily accessible to and usable by metabolically-disabled individuals;

114.   A declaration that Defendant owns, maintains and/or operates its Public Facility in a manner which discriminates against the metabolically-disabled and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.,* N.Y. Exec. Law § 296, *et seq.,* N.Y.C. Administrative Code § 8-107, *et seq.*, and the laws of New York;

115.   An order certifying this case as a Class action under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and his attorneys as Class Counsel;

116.   Compensatory damages in an amount to be determined by proof, including all applicable statutory damages and fines, to Plaintiff and the proposed Class for violations of their civil rights under New York State Human Rights Law and City Law;

117.   Plaintiff's reasonable attorneys' fees, expenses, and costs of suit as provided by state and federal law;

118.   For pre- and post-judgment interest to the extent permitted by law; and

119.   Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

DATED: August 16, 2018

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181

By: */s/ C.K. Lee*
        C.K. Lee, Esq.